UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:19-CV-81043-ROSENBERG/REINHART

FLORIDA POWER & LIGHT COMPANY

      Plaintiff,

v.

BELLSOUTH TELECOMMUNICATIONS,
LLC d/b/a AT&T FLORIDA

      Defendant.

---

**<u>DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY
AND MEMORANDUM OF LAW</u>**

Harvey W. Gurland, Jr., Esq.
Florida Bar No.: 284033
**DUANE MORRIS LLP**
201 S. Biscayne Blvd, Suite 3400
Miami, FL 33131
Telephone:  305.960.2200
Facsimile:   305.397.1874

## TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ............................................................................................... 1

II.    BACKGROUND ................................................................................................. 3

III.   LEGAL STANDARD......................................................................................... 6

IV.   ARGUMENT ...................................................................................................... 7

    A.     FPL's Claims About Non-Payment of Paid Invoices (Counts I–IV) Are Moot. .... 7

    B.     FPL's Claims About the Now-Paid Invoices (Counts I–IV) Also Fail To State a Claim Upon Which Relief May Be Granted. ....................................................... 9

    C.     FPL's Abandonment Claim (Count V) Is Not Ripe............................................. 12

    D.     Alternatively, All Counts Should Be Dismissed (or, at a Minimum, Stayed) Under the Doctrine of Primary Jurisdiction......................................................... 14

V.    CONCLUSION................................................................................................... 18

i

## **TABLE OF AUTHORITIES**

**Cases**

*3-J Hosp., LLC v. Big Time Design, Inc.*, No. 09-61077-CIV, 2009 WL 3586830
(S.D. Fla. Oct. 27, 2009) ..................................................................................... 12

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205 (11th
Cir. 2019) .............................................................................................................. 13

*Accelerating Wireline Broadband Deployment*, Third Report and Order and
Declaratory Ruling, 33 FCC Rcd 7705 (2018) ................................................. 3, 17

*Advamtel, LLC v. Sprint Commc'ns Co.*, 125 F. Supp. 2d 800 (E.D. Va. 2001) .......... 17

*Al Najjar v. Ashcroft*, 273 F.3d 1330 (11th Cir. 2001) ..................................................... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 7

*BellSouth Telecomms., LLC d/b/a AT&T Florida v. Florida Power and Light Co.*,
FCC Docket No. 19-187 ......................................................................................... 2

*Bourdon v. Sessions*, No. 9:17-CV-80207, 2017 WL 5187833 (S.D. Fla. Nov. 9,
2017) ................................................................................................................... 6-7

*In re Bulldog Trucking, Inc.*, 66 F.3d 1390 (4th Cir. 1995) .......................................... 15

*Carvelli v. Ocwen Fin. Corp.*, No. 9:17-CV-80500-RLR, 2018 WL 4941110 (S.D.
Fla. Apr. 30, 2018) ................................................................................................. 2

*Cavalier Tel., LLC. v. Virginia Elec. and Power Co.*, 303 F.3d 316 (4th Cir. 2002) ..... 15

*Comprehensive Health Care Sys. of Palm Beaches, Inc. v. M3 USA Corp.*, No. 16-
CV-80967, 2017 WL 4868185 (S.D. Fla. Oct. 6, 2017) ....................................... 15

*Duke Energy Carolinas, LLC v. Frontier Commc'ns of the Carolinas, LLC*, No.
2:13cv40, 2014 WL 3854146 (W.D.N.C. Aug. 6, 2014) ........................................ 3

*Duke Energy Progress, Inc. v. Frontier Commc'ns of the Carolinas, Inc.*, No.
5:13-CV-617-FL, 2014 WL 4948112 (E.D.N.C. Sept. 25, 2014) .......................... 17

*Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2006) ......................................................... 6

*Far East Conference v. United States*, 342 U.S. 570 (1952) ....................................... 15

*Flanigan's Enters., Inc. of Georgia v. City of Sandy Springs, Georgia*, 868 F.3d
1248 (11th Cir. 2017) .............................................................................................. 8

*Georgia Power Co. v. Charter Commc'ns, LLC*, No. 1:11-CV-4461-MHS, 2013
WL 12247036, at *10 (N.D. Ga. May 28, 2013) ....................................................16

*Georgia Power Co. v. Charter Commc'ns, LLC*, No. 1:11-CV-4461-MHS, 2013
WL 12247041 (N.D. Ga. Oct. 10, 2013) ................................................................15

*Houston v. 7-Eleven, Inc.*, No. 13-60004-CIV, 2014 WL 351970 (S.D. Fla. Jan.
31, 2014) ......................................................................................................................9

*Jackson v. BellSouth Telecomms.*, 372 F.3d 12503 (11th Cir. 2004) ............................7

*Johnson v. Sikes*, 730 F.2d 644 (11th Cir. 1984) .........................................................13

*Kansas City Power & Light Co. v. Am. Fiber Sys., Inc.*, No. Civ. A 03-2330-GTV,
2003 WL 22757927 (D. Kan. Nov. 5, 2003) ........................................................16

*Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287 (11th Cir. 2002) .................12

*Kennedy v. Nick Corcokius Enters., Inc.*, No. 9:15-CV-80642, 2015 WL 7253049
(S.D. Fla. Nov. 17, 2015)........................................................................................8-9

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472 (1990) ..........................................................8

*Mullales v. Aspen Am. Ins. Co.*, No. 18-23661-CIV, 2018 WL 6270974 (S.D. Fla.
Nov. 30, 2018) ...........................................................................................................12

*Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1335 (11th Cir. 2005)..............................12

*Scarfo v. Ginsberg*, 175 F.3d 957 (11th Cir. 1999) ........................................................6

*Smith v. GTE Corp.*, 236 F.3d 1292 (11th Cir. 2001).............................................14-15

*Splitrock Props., Inc. v. Sprint Commc'ns Co.*, No. CIV. 09-4075-KES, 2010 WL
1329634 (D.S.D. March 30, 2010) ...........................................................................17

*Sprint Commc'ns Co. v. Ntelos Tel. Inc.*, No. 5:11cv00082, 2012 WL 3255592
(W.D. Va. Aug. 7, 2012)...........................................................................................17

*Sprint Spectrum L.P. v. AT&T Corp.*, 168 F. Supp. 2d 1095 (W.D. Mo. 2001)...........17

*Swirsky v. Chase Manhattan Mortg. Corp.*, No. 10-60058-CIV, 2010 WL
11603143, at *1 (S.D. Fla. Aug. 3, 2010).................................................................13

*Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645 (E.D. Va. 2010)......................13

*Union Elec. Co. v. Cable One, Inc.*, No. 4:11-CV-299 CEJ, 2011 WL 4478923
(E.D. Mo. Sept. 27, 2011) .........................................................................................17

*United States v. W. Pac. R.R. Co.*, 352 U.S. 59 (1956) ................................................14

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ..........................................................................13

*Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 509 F. App'x 919 (11th Cir. 2013) ......................................................................................12

**Statutes**

47 U.S.C. § 224 .............................................................................................................................16

47 U.S.C. § 224(b)(1) ............................................................................................................*Passim*

**Other Authorities**

47 C.F.R. § 1.740 ......................................................................................................................5, 14

47 C.F.R. § 1.1407 ..........................................................................................................................2

47 C.F.R. § 1.1407(a) .............................................................................................................5, 9, 16

47 C.F.R. § 1.1413(b) ......................................................................................................................2

47 C.F.R. § 1.1414 ....................................................................................................................5, 14

26 FCC Rcd 5240 (2011) .................................................................................................................4

26 FCC Rcd at 5371 (App. C) ........................................................................................................5

Fed. R. Civ. P. 12(b)(1) ...............................................................................................................1, 6

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................1, 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:19-CV-81043-ROSENBERG/REINHART

FLORIDA POWER & LIGHT COMPANY

       Plaintiff,

v.

BELLSOUTH TELECOMMUNICATIONS,
LLC d/b/a AT&T FLORIDA

       Defendant.

## **DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY AND MEMORANDUM OF LAW**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant BellSouth Telecommunications LLC d/b/a AT&T Florida ("AT&T") respectfully moves this Court for entry of an order dismissing, or in the alternative staying, the Complaint filed by Plaintiff Florida Power & Light Company ("FPL"), and in support states:

## I.     INTRODUCTION

FPL's Complaint suffers from two jurisdictional flaws that require its dismissal.  The first four counts are moot; they depend on FPL's allegation that AT&T failed to pay two disputed invoices, but AT&T has paid those invoices in full.  *See* Ex. 1 ¶ 6, Affidavit of Dianne W. Miller.  The fifth count is not ripe because FPL did not submit it to a mandatory pre-complaint mediation that is required by contract.  *Id.* ¶¶ 2, 8.  Without a live claim for this Court to resolve, FPL's Complaint should be dismissed.

But FPL's Complaint should be dismissed even if the Court had jurisdiction.  FPL filed this suit primarily to collect pole attachment rent that it invoiced AT&T for use of space on

FPL's utility poles during the 2017 and 2018 years, which FPL has now collected.  *See* Compl. ¶ 2; Ex. 1 ¶¶ 5–6.  The parties' dispute over the lawfulness of these invoices continues—but it continues at the Federal Communications Commission ("FCC"), where it will and must be decided.  For while FPL claims that it invoiced pole attachment rates that comply with the parties' Joint Use Agreement, as amended ("Agreement"), *see* Compl. ¶¶ 24, 39, the Agreement and federal law forbid FPL from charging AT&T a pole attachment rate that exceeds the rate that is "just and reasonable."  *See* Ex. 2 at Art. VI;[1] 47 U.S.C. § 224(b)(1).  This means that FPL cannot lawfully charge AT&T a rate that is higher than the far lower rate that FPL charges other communications companies that also use space on FPL's utility poles.  *See* 47 C.F.R. § 1.1413(b).  And so, when the parties' Agreement-mandated pre-complaint dispute resolution process failed to resolve this rate dispute, AT&T paid FPL the disputed rental invoices—but AT&T also filed a pole attachment complaint at the FCC to obtain the "just and reasonable" rate to which it is legally entitled and a refund of the millions that it has overpaid.  *See* Ex. 3.[2]

The FCC will issue the controlling decision in the parties' rental rate dispute.  It has the statutory obligation to ensure that AT&T is charged a "just and reasonable" pole attachment rate and the authority to award refunds of AT&T's overpayments.  47 U.S.C. § 224(b)(1); 47 C.F.R.

---

[1] The parties' 1975 Joint Use Agreement, amended in 2007 (the "Agreement"), is attached as Exhibit 2.  It is not protected by a confidentiality provision and has previously been filed in the public record.  *See BellSouth Telecomms., LLC d/b/a AT&T Florida v. Florida Power and Light Co.* ("*AT&T v. FPL*")*,* FCC Docket No. 19-187, Compl. Ex. 1, File EB-19-MD-006 (July 1, 2019).  The Court may consider the "full contents" of the Agreement on this motion to dismiss because it is "referenced in the Complaint."  *See Carvelli v. Ocwen Fin. Corp.*, No. 9:17-CV-80500-RLR, 2018 WL 4941110, at *3 (S.D. Fla. Apr. 30, 2018).

[2] Exhibit 3 is a public version of AT&T's pole attachment complaint (without supporting affidavits and exhibits) in *AT&T v. FPL*, FCC Docket No. 19-187, File EB-19-MD-006 (July 1, 2019).  AT&T has since amended its pole attachment complaint to provide requested analysis about its entitlement to refunds.  The amended pole attachment complaint and other filings are available at https://www.fcc.gov/ecfs/search/filings?q=(proceedings.name:((19%5C-187*))%20OR%20proceedings.description:((19%5C-187*)))&sort=date_disseminated,DESC.

§ 1.1407.  Its decision is expected no later than May 2020.  There is no good reason to proceed with this litigation in the meantime.  As another federal court concluded in similar circumstances, "[i]t would be a waste of judicial resources for this Court to proceed with this case while [the] complaint is pending with the FCC."  *Duke Energy Carolinas, LLC v. Frontier Commc'ns of the Carolinas, LLC*, No. 2:13cv40, 2014 WL 3854146, at *5 (W.D.N.C. Aug. 6, 2014).  The same is true here.  As a result, if the case is not dismissed on jurisdictional grounds, it should be dismissed, or at a minimum stayed, so the FCC has an opportunity to resolve the parties' dispute about the same pole attachment rental invoices at issue in FPL's unnecessary Complaint.

## II.    BACKGROUND

AT&T and FPL share "hundreds of thousands of utility poles" under the terms of the Agreement, *see* Compl. ¶¶ 13, 15, which includes operational provisions that govern the parties' use and maintenance of the utility poles and rental provisions that define the applicable pole attachment rates for use of space on the utility poles, *see* Ex. 2.  This dispute began when AT&T questioned the pole attachment rates in FPL's 2017 invoice.  *See* Compl. ¶ 24.

The Agreement requires FPL to invoice pole attachment rates that comply with a specified rate formula and "all applicable provisions of law."  *See* Ex. 2 at Arts. VI, X.  One "applicable provision of law" is the federal Pole Attachment Act, which guarantees AT&T a "just and reasonable" rate for use of FPL's poles.  *See* 47 U.S.C. § 224(b)(1).  The FCC has released several orders in recent years defining the rate that is "just and reasonable," including an order issued just last year.[3]  Upon receipt of FPL's 2017 invoice, AT&T asked FPL to confirm

---

[3] *See, e.g.*, *Accelerating Wireline Broadband Deployment*, Third Report and Order and Declaratory Ruling, 33 FCC Rcd 7705 (2018); *Implementation of Section 224 of the Act; A*

that the invoiced amounts were, in fact, consistent with the Agreement and the "just and reasonable" rate required by federal law.  *See* Ex. 1 ¶ 3.

The invoice dispute was submitted to the Agreement's mandatory dispute resolution process that is a condition precedent to litigation.  *See* Ex. 2 at Art. XIIIA.  The process takes almost six months to complete.  *Id.* § 13A.2.  The parties first summarize their position on the disputed issues and hold upper management negotiations.  *Id.*  If the dispute is not resolved, and either party wants to file litigation, it must first ask for a non-binding mediation.  *Id.*  The obligation to mediate is an "essential and material provision" of the Agreement.  *Id.* § 13A.3. Then, if the dispute is still "not resolved within sixty (60) calendar days following the first day of mediation, either party may initiate litigation."  *Id.* § 13A.2.  Throughout the dispute resolution process, "[e]ach Party shall continue to perform its obligations under the JUA pending final resolution of the Dispute, unless to do so would be impossible or impracticable under the circumstances."  *Id.* § 13A.4.

While the invoice dispute was being negotiated in the dispute resolution process, FPL sent its 2018 invoice for pole attachment rent, which raised the same concerns as the 2017 invoice.  *See* Compl. ¶ 39.  FPL also unilaterally pronounced AT&T in "default" of the Agreement for non-payment of the disputed invoices and claimed that FPL had "terminate[d] AT&T's rights to attach to FPL-owned poles" due to the alleged "default."  *See id*. ¶¶ 49, 61, Ex. A.  FPL acknowledged, however, that the rental rate dispute was scheduled for non-binding mediation on May 1, 2019 and stated that it would "not take any immediate adverse action or

---

*National Broadband Plan for Our Future*, Report and Order and Order on Reconsideration, 26 FCC Rcd 5240 (2011) ("*Pole Attachment Order*").

require AT&T to begin removing its facilities" unless AT&T's non-payment of the disputed

invoices was "not resolved at the close of the mediation process." *See id.*, Ex. A at 2.

When it became clear that the rental rate dispute would not be resolved by the end of the

dispute resolution process (*i.e.*, within 60 days of the May 1, 2019 mediation), AT&T processed

payment of the 2017 and 2018 invoices. *See* Ex. 1 ¶ 5.  AT&T's checks were issued on

Wednesday, June 26, 2019, were sent by overnight mail on Friday, June 28, 2019, and were

delivered to FPL at 9:22 am on Monday, July 1, 2019. *Id.* ¶¶ 6–7.  AT&T paid the full

$9,244,141.74 and $10,532,283.79 amounts invoiced for 2017 and 2018, respectively. *See id.*

¶ 6; *see also* Compl. ¶¶ 24, 39.  AT&T has not yet been invoiced for 2019 rent, which will not be

due under the Agreement until early 2020.  Ex. 2 § 10.9.

AT&T thus cured any possible "non-payment" alleged by FPL.  Whether AT&T was, in

fact, required to pay the invoiced amounts, however, remains very much in dispute—but that is

an issue that can only be resolved by the FCC.  By statute, the FCC "shall regulate the rates …

for pole attachments" in Florida "to provide that such rates … are just and reasonable" and shall

"hear and resolve complaints concerning such rates."  47 U.S.C. § 224(b)(1); *see also Pole*

*Attachment Order*, 26 FCC Rcd at 5371 (App. C).  AT&T, as a result, filed a pole attachment

complaint at the FCC to challenge the invoiced rates and seek a refund of the millions of dollars

it has overpaid.  *See* Ex. 3; *see also* 47 C.F.R. § 1.1407(a) (giving FCC authority to set a just and

reasonable rate and refund overpayments).  The FCC is expected to issue its decision no later

than mid-May 2020.  *See* 47 C.F.R. §§ 1.740, 1.1414; *see also* Ex. 4 (Letter from L. Griffin,

FCC, to counsel for AT&T and FPL, Docket 19-187, File EB-19-MD-006 (July 15, 2019)).

On July 2, 2019, the day after FPL received payment of the disputed amounts in FPL's

2017 and 2018 invoices, FPL served AT&T a copy of its Complaint, which apparently was e-

filed at 12:30 am on July 1, 2019.  *See* Compl. p. 1; *see also* Ex. 1 ¶ 7.  The first four counts of

FPL's Complaint depend on FPL's allegation that the now-paid 2017 and 2018 invoices remain

unpaid.  *See, e.g.*, Compl. ¶¶ 27, 43, 46–47, 58–59.  The fifth count raises a separate operational

issue related to FPL's replacement of thousands of its poles across Florida.  *See id*. ¶¶ 79–89.

Specifically, FPL seeks to "abandon" to AT&T thousands of "old FPL poles that are no longer in

use."  *See id.* ¶ 51.  This pronouncement is an unmistakable transparent strategy to shift the

substantial removal and disposal costs to AT&T.  *See id*. ¶¶ 81–89.  Unlike the invoice dispute,

this "abandonment" dispute has not been exhausted through the pre-complaint dispute resolution

process; after an upper management meeting on March 8, 2019, FPL did not initiate mediation as

required prior to filing suit.  *See* Ex. 2 § 13A.2; *see also* Ex. 1 ¶¶ 2, 8.

## III.   LEGAL STANDARD

All five counts of FPL's Complaint should be dismissed for lack of subject matter

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because mootness and ripeness are jurisdictional.

*See Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006); *Al Najjar v. Ashcroft*, 273 F.3d

1330, 1336 (11th Cir. 2001).  In resolving this motion, "the Court may look outside the four

corners of the complaint to determine if jurisdiction exists."  *See Bourdon v. Sessions*, No. 9:17-

CV-80207, 2017 WL 5187833, at *2 (S.D. Fla. Nov. 9, 2017) (citation omitted); *see also Scarfo

v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) ("Factual attacks challenge the existence of

subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the

pleadings, such as testimony and affidavits, are considered." (quotation omitted)).  In addition,

"no presumptive truthfulness attaches to [FPL]'s allegations, and the existence of disputed

material facts will not preclude the trial court from evaluating for itself the merits of

jurisdictional claims."  *Id.* at 960–61 (citation omitted).

FPL's claims also fail to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). When considering whether FPL has failed to state a claim, "this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff." *Bourdon*, 2017 WL 5187833, at \*2 (citation omitted). To survive the motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although this pleading standard 'does not require "detailed factual allegations," … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Bourdon*, 2017 WL 5187833, at \*2 (quoting *Iqbal*, 556 U.S. at 678). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citation omitted).

## IV.   ARGUMENT

FPL's Complaint should be dismissed because its first four counts are about disputed pole attachment invoices that have been paid (Counts I–IV) and its fifth count has not yet been mediated as required (Count V). There is, therefore, no live controversy that this Court can resolve. Even if there were, FPL's claims lack merit and fall within the primary jurisdiction of the FCC. FPL's Complaint should never have been filed—and it certainly should not have been pursued after FPL received payment in full of all invoiced amounts. This Court should dismiss the Complaint or, at a minimum, stay it until the FCC resolves the related case before it.

### A.   FPL's Claims About Non-Payment of Paid Invoices (Counts I–IV) Are Moot.

The first four counts in FPL's Complaint depend on the factually false allegation that paid invoices remain unpaid:

- Count I:  "AT&T Florida has made no payments on the 2017 Invoice."  Compl. ¶ 26.

- Count II: "AT&T Florida has not made any payments on the 2018 Invoice." *Id*. ¶ 42.

- Count III: "AT&T Florida has made no payment on the 2017 Invoice …. Likewise, AT&T Florida has made no payment on the 2018 Invoice." *Id*. ¶¶ 46–47.

- Count IV: "[AT&T Florida] has failed to pay FPL for being attached during the 2017 and 2018 calendar years." *Id*. ¶ 57.

But the 2017 and 2018 invoices have been paid, and they were paid in the exact amounts alleged by FPL. *See* Ex. 1 ¶ 6; Compl. ¶¶ 24, 39.

Counts I through IV must therefore be dismissed as moot. "It is well established that '[u]nder Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies'" that can "be redressed by a favorable judicial decision." *Flanigan's Enters., Inc. of Georgia v. City of Sandy Springs, Georgia*, 868 F.3d 1248, 1255 (11th Cir. 2017) (quoting *Lewis v. Cont'l Bank Corp*., 494 U.S. 472, 477 (1990)). As a result, if a court does not have "the ability to give the plaintiff … meaningful relief, then the case is moot and must be dismissed." *Kennedy v. Nick Corcokius Enters., Inc*., No. 9:15-CV-80642, 2015 WL 7253049, at *2 (S.D. Fla. Nov. 17, 2015) (citation omitted).

This Court cannot give FPL "meaningful relief" with respect to Counts I and II, which allege breach of contract due to non-payment of the 2017 and 2018 invoices, because FPL has already received payment of the alleged invoice amounts. Compl. ¶¶ 27, 43. It received that payment at 9:22 am on July 1, 2019—about 9 hours after FPL e-filed its Complaint around midnight and more than 24 hours before FPL served the Complaint on AT&T. *See id*., p.1; *see also* Ex. 1 ¶ 7. But a race to file before receipt of payment does not provide the Court with jurisdiction over FPL's claims. There must be an "actual controversy" that the Court can resolve "at all stages of review, not merely at the time the complaint is filed." *Flanigan's Enters.*, 868 F.3d at 1255 (citation omitted). There is no such "actual controversy" with respect to FPL's breach of contract claims and has not been since early morning July 1.

There is also no "actual controversy" for this Court to resolve with respect to Counts III and IV, which seek injunctive relief based on the alleged non-payment of the invoices.  In Count III, FPL asks the Court to enforce a "default" provision in the Agreement, but the provision requires a "failure to meet a money payment obligation."  *See* Compl. ¶ 48; *see also* Ex. 2 § 12.3. The "default" provision is, therefore, not applicable post-payment of the invoiced amounts.  *See* Compl. ¶ 46 (effectively conceding that the "default of [a] money payment obligation" must be "continuing through this date").  In Count IV, FPL seeks injunctive relief for "trespass" based on an alleged failure to "cure" the alleged "default as to the payment obligation due on the 2017 Invoice [and] the 2018 Invoice."  *Id*. ¶¶ 58–60.  This Count IV claim is also no longer viable given payment of the invoices.  AT&T "cured" the alleged default in the orderly manner contemplated by the parties' mandatory dispute resolution procedure—and concomitantly seeks refunds from the federal agency with authority to award them.  *See* Ex. 3; *see also* 47 C.F.R. § 1.1407(a).

Because Counts I through IV depend on non-payment of invoices that have, in fact, been paid, "[a]ny decision on the merits" of those claims would "be an impermissible advisory opinion."  *Houston v. 7-Eleven, Inc*., No. 13-60004-CIV, 2014 WL 351970, at *1 (S.D. Fla. Jan. 31, 2014) (citation omitted).  FPL has received the relief that it sought in the mandatory dispute resolution process about the parties' rental rate dispute:  payment of the 2017 and 2018 invoices. *See* Compl. Ex. A.  Its Count I through IV claims are moot and must be dismissed because "mootness is jurisdictional."  *See Kennedy*, 2015 WL 7253049, at *2 (citation omitted).

**B.    FPL's Claims About the Now-Paid Invoices (Counts I–IV) Also Fail To State a Claim Upon Which Relief May Be Granted.**

Counts I through IV should also be dismissed because they are meritless and fail to state a valid claim for relief.  Each claim is precluded by the plain language of the pre-complaint

dispute resolution provision in the parties' Agreement.  *See* Ex. 2 at Art. XIIIA.  Under that

provision, the parties agreed to submit all disputes, including invoice disputes, to an orderly pre-

complaint process *during which* they would maintain the status quo operationally.  *See id.*

§§ 13A.1–13A.4.  In particular, the Agreement states that "[e]ach Party shall continue to perform

its obligations under the [Agreement] pending final resolution of any Dispute, unless to do so

would be impossible or impracticable under the circumstances."  *Id.* § 13A.4.

      This agreement to stand-down and let the dispute resolution process work as intended

controls over any inconsistent Agreement provisions, including the default provision on which

FPL relies.  *See id.* § 12.3, Amendment ¶ 2.  And the dispute resolution provision must control,

as it requires up to 160 days to complete, *id.* § 13A.2, whereas the default provision would kick

in after just 60 days, *id.* at Art. XII.  The parties thus provided for a situation like this one, where

the allegation of default is itself in dispute—the parties must continue to share utility poles

pending resolution of the dispute without recourse to threats of immediate operational harm

through alleged "default" remedies.  *Id.* § 13A.4.

      FPL, therefore, had no right to unilaterally declare AT&T in default for non-payment of

the invoices (Counts I, II) and seek to enforce the remedies for default (Counts III, IV) *at the*

*same time* that the parties were actively negotiating the question of whether there was a default at

all.  If the invoiced amounts were not due under the Agreement or federal law, then AT&T could

not be in default of the Agreement for not paying them.  Absent resolution of that issue through

the agreed-upon process, FPL lacked authority to demand removal of facilities from more than

420,000 poles.  *See* Compl. Ex. A.[4]

---

[4] FPL incorrectly alleges that it also has a current right to "payments from AT&T as calculated under the terms of the Agreement from January 1, 2019 through March 25, 2019."  *See* Compl.

FPL nonetheless declared itself the winner of a negotiation process that had not run its course—and could not have run its course given the stages and time periods required by the dispute resolution provision. *See* Ex. 2 § 13A.2. The following timeline shows how FPL tried to jump months ahead in the process, instead of waiting for the ongoing negotiations:

- August 31, 2018: FPL claimed "default" for non-payment of the 2017 invoice. *See* Compl., Ex. A at 1.

- March 25, 2019: FPL claimed it was exercising its "default" remedy by terminating AT&T's right to use FPL's poles. *See id.* ¶¶ 49, 61.

- May 1, 2019: Mediation of the rental rate dispute. *See id.*, Ex. A at 2; Ex. 1 ¶ 5.

- Sunday, June 30, 2019: Pre-complaint dispute resolution process for the invoice dispute ended 60 days after mediation. *See* Ex. 2 § 13A.2.

- Monday, July 1, 2019: Payment received by FPL at 9:22 am. *See* Ex. 1 ¶ 7.

It was certainly not "impossible or impracticable" for FPL to let the process work as intended while the parties continued to share utility poles. *See* Ex. 2 § 13A.4. FPL attached to its Complaint a March 25, 2019 letter in which it stated that it would "*not* take any immediate adverse action or require AT&T to begin removing its facilities" unless AT&T's non-payment was "not resolved at the close of the mediation process." Compl. Ex. A (emphasis added). Under the Agreement, that process began with a May 1, 2019 mediation and continued for 60 days thereafter. Ex. 1 ¶ 5; Ex. 2 § 13A.2. The following morning, FPL received payment. Ex. 1 ¶ 7. Counts I through IV should therefore be dismissed for this reason as well: even accepting FPL's allegations as true, it had no right to exercise "default" remedies during a mandatory dispute resolution process about its "default" allegation. As a result, there was no default or

---

¶ 53. It does not. Under the Agreement, 2019 rent cannot be invoiced, and is not due, until early 2020. *See* Ex. 2 § 10.9.

termination under the Agreement, *see, e.g.*, Compl. ¶¶ 27, 43, 48, 61, and thus no basis for FPL's Counts I through IV claims.  They should be dismissed with prejudice.

      **C.**    **FPL's Abandonment Claim (Count V) Is Not Ripe.**

Count V must also be dismissed on jurisdictional grounds because it is not ripe.  In contrast to the rental rate dispute, FPL elected *not* to pursue its pole abandonment claim through the entirety of the dispute resolution process.  Instead, as the exhibits to the Complaint demonstrate, FPL limited its mediation request to the issues identified in an August 31, 2018 notice.  *See* Compl. Ex. A; *see also* Ex. 1 ¶¶ 4, 8.  By definition, that August 31, 2018 request could not have included the pole abandonment dispute.  FPL alleges that it was not until "December 19, 2018, [that] FPL gave written notice to AT&T Florida that FPL intended to abandon certain specified poles sixty (60) days thereafter," and not until March 20, 2019, that "FPL sent AT&T Florida a list of the 5,230 poles" that it contends are abandoned.  Compl. ¶¶ 81, 83, Ex. B.

The "ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005).  As a result, "[w]here the parties' agreement requires mediation as a condition precedent to … litigation, the complaint must be dismissed." *3-J Hosp., LLC v. Big Time Design, Inc.*, No. 09-61077-CIV, 2009 WL 3586830, at *2 (S.D. Fla. Oct. 27, 2009) (citing *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287 (11th Cir. 2002)).  Until then, the dispute is "not ripe and [i]s due to be dismissed without prejudice." *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 509 F. App'x 919, 923 (11th Cir. 2013); *see also Mullales v. Aspen Am. Ins. Co.*, No. 18-23661-CIV, 2018 WL 6270974, at *2 (S.D. Fla. Nov. 30, 2018) (granting motion to dismiss where "provision governing mandatory non-binding mediation clearly requires that the parties submit to mediation

as a condition precedent to any litigation between them"); *Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645, 651 (E.D. Va. 2010) ("A number of courts have found that when parties to a lawsuit have elected not to be subject to a court's jurisdiction until some condition precedent is satisfied, such as mediation, the appropriate remedy is to dismiss the action.").

Dismissal is particularly appropriate where, as here, FPL has filed a declaratory judgment claim. *See* Compl. ¶¶ 73–89.  Such claims require that the "controversy between the parties … be real and immediate"; it "cannot be conjectural, hypothetical, or contingent."  *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co*., 925 F.3d 1205, 1210 (11th Cir. 2019) (quotations omitted); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.").  With a mandatory pre-complaint dispute resolution process designed to eliminate disputes, FPL's pole abandonment dispute cannot be so "real and immediate" that it justifies the intervention of this Court until the parties, at least, give the process an opportunity to work.  *See, e.g.*, *Johnson v. Sikes*, 730 F.2d 644, 649 (11th Cir. 1984) ("[T]he hypothetical and contingent nature of the questions raised in this [case] counsel against issuing an opinion premised on uncertain and contingent future events that may not occur as anticipated or may not occur at all.").

FPL's Count V claim, therefore, should be dismissed.[5]  The parties made pre-litigation mediation such "an essential and material provision" of their Agreement, they provided the

---

[5] FPL's barebones assertion that "[a]ll conditions precedent to bringing this suit have been satisfied or waived" is insufficient to survive dismissal.  *See, e.g.*, *Swirsky v. Chase Manhattan Mortg. Corp.*, No. 10-60058-CIV, 2010 WL 11603143, at *1 (S.D. Fla. Aug. 3, 2010) ("Other than the conclusory allegations at paragraph 26 of the Amended Complaint of compliance with or waiver of all conditions precedent, [Plaintiff] has not alleged facts to address these specific

express right to enforce "such obligation in the courts having jurisdiction hereunder."  Ex. 2
§ 13A.3.  The Court should do just that by requiring FPL to seek a mediated resolution of its
abandonment claim before it imposes upon the Court's time and resources.

> **D.     Alternatively, All Counts Should Be Dismissed (or, at a Minimum, Stayed)
> Under the Doctrine of Primary Jurisdiction.**

If the Court were to conclude that it has jurisdiction over any aspect of FPL's Complaint,
the Court should nonetheless dismiss or stay this case under the doctrine of primary jurisdiction.
The lawfulness of the same invoices at issue in FPL's Complaint will be decided by the FCC
within the next 10 months.  *See* 47 C.F.R. §§ 1.740, 1.1414; *see also* Ex. 4.  This is the precise
situation in which the primary jurisdiction doctrine applies to "promot[e] proper relationships
between the courts and administrative agencies charged with particular regulatory duties" and to
preserve judicial and party resources.  *See United States v. W. Pac. R.R. Co*., 352 U.S. 59, 64–65
(1956).

"The primary jurisdiction doctrine 'comes into play whenever enforcement of the claim
[before the Court] requires the resolution of issues which, under a regulatory scheme, have been
placed within the special competence of an administrative body; in such a case the judicial
process is suspended pending referral of such issues to the administrative body for its views.'"
*Smith v. GTE Corp*., 236 F.3d 1292, 1298 n.3 (11th Cir. 2001) (quoting *W. Pac. R.R. Co*., 352
U.S. at 64).  A dismissal in favor of the agency is appropriate in such cases regardless of whether
the agency's decision will resolve every issue before the court.  "The principal reasons for the
doctrine of primary jurisdiction are to obtain the benefit of the expertise and experience of the
administrative agencies and the desirable uniformity which occurs when a specialized agency

---

pre-suit notice provisions of the parties' Agreement.  The parties agreed to this dispute resolution
mechanism which avoids the costs of litigation if the parties can resolve their disputes amicably.
Thus, compliance is required.").

decides certain administrative questions." *Cavalier Tel., LLC. v. Virginia Elec. and Power Co.*, 303 F.3d 316, 322 n.10 (4th Cir. 2002) (citation omitted).

As a result, the Court "may dismiss or stay an action pending a resolution of some portion of the actions by an administrative agency." *Smith*, 236 F.3d at 1298 n.3 (citation omitted); *see also Far East Conference v. United States*, 342 U.S. 570, 574–75 (1952) (holding that "preliminary resort" should be made to agency even where agency review will not dispose of the entire case); *In re Bulldog Trucking, Inc.*, 66 F.3d 1390, 1399 (4th Cir. 1995) (holding that primary jurisdiction applies where the claims before the Court "contain some issue within the special competence of an administrative agency"); *Georgia Power Co. v. Charter Commc'ns, LLC*, No. 1:11-CV-4461-MHS, 2013 WL 12247041, at *8 (N.D. Ga. Oct. 10, 2013) ("[T]he Court will not only continue to stay the breach of contract claims," but will "stay[ ] all of the claims in this case until the parties resolve the rate issues before the FCC").

Courts consider four factors when "the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Comprehensive Health Care Sys. of Palm Beaches, Inc. v. M3 USA Corp.*, No. 16-CV-80967, 2017 WL 4868185, at *2 (S.D. Fla. Oct. 6, 2017) (citation omitted).  Each factor exists here.

*First*, AT&T has filed a complaint "with the FCC to clarify a central—and possibly dispositive—issue in this case." *See id.*  Within the coming months, the FCC will decide whether the rates that FPL invoiced for 2017 and 2018 pole attachment rent comply with federal law. *See* Exs. 3, 4.  That decision will necessarily determine whether FPL had any right to collect those rates from AT&T under an Agreement that requires compliance with "all applicable

provisions of law." *See* Ex. 2 at Art. VI.  And, given the FCC's broad authority over "rates, *terms, and conditions* for pole attachments," 47 U.S.C. § 224(b)(1) (emphasis added), the FCC's decision may also include analysis helpful to the resolution of FPL's operational claims.

 *Second*, the FCC has been statutorily charged with deciding pole attachment disputes.  It "*shall regulate* the rates, terms, and conditions for pole attachments" in Florida "to provide that such rates, terms, and conditions are just and reasonable."  47 U.S.C. § 224(b)(1) (emphasis added).  In exercising that authority, it may establish a "just and reasonable" rate that is different from an agreed-upon rate and order a refund of prior overpayments.  47 C.F.R. § 1.1407(a); *see also Georgia Power Co. v. Charter Commc'ns, LLC*, No. 1:11-CV-4461-MHS, 2013 WL 12247036, at *10 (N.D. Ga. May 28, 2013) ("[T]he FCC has the power to abrogate terms and conditions of pole attachment agreements to ensure that they are reasonable[.]").  "This begs the question of why the Court would use time and resources to determine what the parties intended [in an Agreement] when the FCC has the authority to subsequently find the [Agreement] rate is unreasonable and prescribe a new one."  *Georgia Power Co.*, 2013 WL 12247036, at *11.

 *Third*, pole attachment disputes "require the expertise of the FCC, and … their resolution is a part of the regulatory scheme Congress delegated to the FCC under the Pole Attachment Act."  *Kansas City Power & Light Co. v. Am. Fiber Sys., Inc.*, No. Civ. A 03-2330-GTV, 2003 WL 22757927, at *4 (D. Kan. Nov. 5, 2003).  This pole attachment dispute is no exception.  AT&T has challenged the pole attachment rates that FPL invoiced as contrary to federal law and FCC Orders that broadly govern the use of utility poles owned by communications and electric utilities.  *See* 47 U.S.C. § 224.  Without question, "[t]he FCC is in the best position to interpret its own order and regulations to [resolve the party's rate dispute], in light of its statutorily-mandated duty to 'regulate the rates, terms, and conditions for pole attachments to provide that

such rates, terms, and conditions are just and reasonable.'" *Duke Energy Progress, Inc. v. Frontier Commc'ns of the Carolinas, Inc.*, No. 5:13-CV-617-FL, 2014 WL 4948112, at *4 (E.D.N.C. Sept. 25, 2014) (quoting 47 U.S.C. § 224(b)(1)); *see also Union Elec. Co. v. Cable One, Inc.*, No. 4:11-CV-299 CEJ, 2011 WL 4478923, at *5 (E.D. Mo. Sept. 27, 2011) ("The FCC's issuance of new regulations governing pole attachments … provides further support for application of the primary jurisdiction doctrine.").

        *Fourth*, AT&T's dispute over the reasonableness of FPL's rates "should be referred to the FCC for determination under the doctrine of primary jurisdiction, as they involve matters within the agency's special expertise and which require a uniform national resolution." *See Sprint Spectrum L.P. v. AT&T Corp.*, 168 F. Supp. 2d 1095, 1099, 1101 (W.D. Mo. 2001); *see also Splitrock Props., Inc. v. Sprint Commc'ns Co.*, No. CIV. 09-4075-KES, 2010 WL 1329634, at *10 (D.S.D. March 30, 2010) ("It is well established that the FCC is specially positioned to determine the reasonableness of rates."); *Advamtel, LLC v. Sprint Commc'ns Co.*, 125 F. Supp. 2d 800, 806 (E.D. Va. 2001) (finding that "a risk of inconsistent results exists" where a pending FCC proceeding will "address the precise question at issue here").  Especially here, where the parties' rate dispute raises questions about the implementation of an FCC Order issued just last year,[6] the pole attachment rate issues are "best resolved, in the first instance, by the FCC, the agency with both the expertise in these technical issues and the mandate to elucidate and implement the Act." *See Sprint Commc'ns Co. v. Ntelos Tel. Inc.*, No. 5:11cv00082, 2012 WL 3255592, at *15 (W.D. Va. Aug. 7, 2012)  Providing the FCC time to decide the parties' rate

---

[6] *See Accelerating Wireline Broadband Deployment*, Third Report and Order and Declaratory Ruling, 33 FCC Rcd 7705 (2018).

dispute is thus appropriate and wise—and will spare the Court from presiding over a wasteful, unnecessary, and duplicative case.

## V.   CONCLUSION

For the foregoing reasons, Counts I through IV of FPL's Complaint should be dismissed with prejudice because they are moot and meritless, and Count V of FPL's Complaint should be dismissed without prejudice because it is not ripe.  Alternatively, Counts I through V of FPL's Complaint should be dismissed (or, at a minimum, stayed) pending resolution of the parties' pending FCC pole attachment Complaint proceeding.


Dated:  July 29, 2019                              Respectfully submitted,


                                                   */s/ Harvey W. Gurland, Jr.*
                                                   Harvey W. Gurland, Jr., Esq.
                                                   Florida Bar No.: 284033
                                                   **DUANE MORRIS LLP**
                                                   201 S. Biscayne Blvd, Suite 3400
                                                   Miami, FL 33131
                                                   Telephone:  305.960.2200
                                                   Facsimile:   305.397.1874
                                                   hwgurland@duanemorris.com
                                                   pnmendoza@duanemorris.com
                                                   nmcastillo@duanemorris.com
                                                   *Counsel for Defendant*

DM1\9823386.1