UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  19-81043-CIV-ROSENBERG/REINHART

FLORIDA POWER & LIGHT COMPANY

        Plaintiff,

v.

BELLSOUTH TELECOMMUNICATIONS,
LLC d/b/a AT&T FLORIDA

        Defendant.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY AND MEMORANDUM OF LAW [DE 4]

This matter is before the Court on the Defendant's Motion to Dismiss, or in the Alternative, Stay ("Motion"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The District Court referred this matter to the undersigned for a Report and Recommendation. DE 21. The undersigned has reviewed the Complaint (DE 1), the Motion (DE 4), the Plaintiff's Memorandum in Opposition to Defendant's Motion (DE 12), and the Defendant's Reply (DE 15). The Court heard oral argument on November 12, 2019. DE 27. This matter is ripe for decision. For the reasons stated below, it is **RECOMMENDED** that the Motion be **GRANTED IN PART AND DENIED IN PART.**

1

# **FACTS**[1]

In 1975, Plaintiff Florida Power & Light Company ("FPL") and Defendant BellSouth Telecommunications, LLC d/b/a AT&T Florida ("AT&T") entered into a Joint Use Agreement ("Agreement"), wherein they agreed to share utility poles. ¶¶ 1, 13. Under the Agreement, FPL and AT&T agreed to pay annual rent to each other for the right to use the other's poles. ¶¶ 2, 20. The Agreement sets forth the guidelines for calculating the amount due for each calendar year. ¶ 22. Section 12.3 of the Agreement authorizes a party to terminate the other party's right to attach equipment to its poles in the event of "the failure to meet a money payment obligation." DE 4-3 at 18.

On March 5, 2018, FPL sent AT&T an invoice in the amount of $9,244,141.74 for use of FPL's poles in 2017. ¶ 24. According to FPL, payment of the 2017 invoice was due on or before April 4, 2018. ¶ 25. On February 1, 2019, FPL sent AT&T an invoice for $10,532,283.79 for the charges due for 2018. ¶ 39. Payment of the February 1 invoice was due on or before March 3, 2019. ¶ 41. FPL did not receive payment for the 2017 and 2018 invoices until July 1, 2019. ¶¶ 42, 46; DE 4 at 10. Prior to that, on March 25, 2019, FPL notified AT&T that pursuant to Section 12.3 it was terminating AT&T's right to use FPL poles. ¶ 49.

FPL commenced this action against AT&T on July 1, 2019, alleging that AT&T breached the Joint Use Agreement by failing to pay FPL's invoices for the years 2017 and 2018. *See generally* DE 1-2. In Count I of its Complaint, FPL alleges a claim for breach of contract and seeks to recover $9,244,141.74 for use of FPL's poles during 2017. Count II alleges a claim for breach of contract based on AT&T's failure to pay for attaching its equipment to FPL's poles in 2018. In Counts III and IV, FPL alleges claims for specific performance and trespass. Specifically,

---

[1] All paragraph citations are to the Complaint (DE 1) unless otherwise specified.

FPL seeks to enforce its termination rights under section 12.3 of the Joint Use Agreement and requests an injunction requiring AT&T to remove its equipment from FPL's poles. Finally, Count V of FPL's complaint seeks declaratory relief regarding the ownership of 5,230 poles.

After FPL filed its Complaint, AT&T filed a pole attachment complaint with the Federal Communications Commission ("FCC"), alleging that FPL violated the Agreement and federal law by charging AT&T a rate that is not "just and reasonable." 47 U.S.C. § 224(b)(1). According to AT&T, under the Agreement and the Pole Attachment Act, FPL is required to charge a "just and reasonable" rate for use of its poles. AT&T seeks a ruling from the FCC regarding the "just and reasonable" rate, as well as a refund of money it believes it has overpaid.

AT&T has moved for dismissal of FPL's Complaint in this Court under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). DE 4. AT&T argues that Counts I, II, III, and IV are moot because they are based on FPL's allegations that AT&T failed to pay the 2017 and 2018 invoices, but AT&T has since paid them. AT&T requests dismissal of Count V on the ground that it is not ripe because FPL did not submit it to pre-suit mediation as the Agreement requires.

## LEGAL STANDARDS

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a claim must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002). While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (explaining that the Rul8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-

3

harmed me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

### 1. <u>Rule 12(b)(6)</u>

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pleaded factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555 (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 570. In addition, "courts may infer from factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal,* 556 U.S. at 682). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557).

When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U.S. at 679. Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc*., No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made

4

upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

### 2. Rule 12(b)(1)

Attacks on subject matter jurisdiction in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) may be either facial or factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "A facial attack on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.2d at 1529). Factual attacks "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence*, 919 F.2d at 1529. "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*. "[T]he district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *McElmurray*, 501 F.3d at 1251.

## DISCUSSION

AT&T's first argument in support of dismissal is that the Court lacks subject matter jurisdiction over Counts I-IV because they are moot. "Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of Cases and Controversies." *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1281 (11th Cir. 2004) (citation

5

and internal quotation marks omitted). "The doctrine of mootness derives directly from the case-or-controversy limitation because an action that is moot cannot be characterized as an active case or controversy." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (citation and internal quotation marks omitted). "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993). "If events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed. Indeed, dismissal is required because mootness is jurisdictional." *Al Najjar*, 273 F.3d at 1336 (citation omitted). "Generally speaking, one such [factual] circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011).

### Counts I and II

Counts I and II of the Complaint are claims for breach of contract based on AT&T's alleged failure to pay the 2017 and 2018 invoices it received from FPL. Counts I and II seek damages for the exact amounts of the invoices, as well as prejudgment interest. AT&T argues that Counts I and II are moot since it has paid the invoices in full, and that the invoices it received from FPL did not include interest. FPL does not dispute that it received payment, but instead takes the position that "[a]fter first applying AT&T's payments to satisfy the substantial interest charges that had accumulated as of July 1, 2019, the remaining funds had the impact of reducing the principal damages to the sum of $704,404.13 in Count I and to the sum of $225,558.20 in Count II." DE 12 at 8.

FPL has not shown that a live case-or-controversy remains as to counts I and II because the amount of damages it seeks did not become liquidated and thus are not "susceptible of

prejudgment interest." *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 214 (Fla. 1985); *see also Tolin v. Doudov*, 626 So. 2d 1054, 1056 (Fla. 1st Dist. Ct. App. 1993) ("[T]he proper method of calculating prejudgment interest requires not only a liquidation of damages, but that a determination be made as to the date that the claim became fixed"). Under Florida law, a claim becomes liquidated "once a finder of fact has determined the amount of damages and defendant's liability therefor." *Argonaut*, 626 So. 2d at 215; *see also Hughes v. Priderock Capital Partners, LLC*, No. 9:18-CV-80110, 2019 WL 1318101, at *2 (S.D. Fla. Mar. 22, 2019) (J. Rosenberg) (quoting *Air Ambulance Professionals, Inc. v. Thin Air*, 809 So. 2d 28, 31 (Fla. 4th Dist. Ct. App. 2002)) ("Prejudgment interest is allowed only on liquidated claims, that is, sums which are certain but which the defendant refuses to surrender."). Accordingly, "when a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss." *Argonaut*, 626 So. 2d at 215.

FPL's damages did not become liquidated because there has been no judgment or verdict in its favor. Without a liquidation of damages, FPL is not entitled to an award of prejudgment interest. Because the amount of damages sought in Counts I and II turn on FPL's calculation of prejudgment interest, Counts I and II fail to establish a live case or controversy and should be dismissed as moot.

**Counts III and IV**

Count III of the Complaint alleges a claim for breach of contract based on AT&T's purported failure to remove its equipment from FPL's poles after FPL terminated AT&T's right to attach to its poles on March 25, 2019, pursuant to section to 12.3 of the parties' Agreement. FPL seeks specific performance and asks the Court to order AT&T to remove its equipment from FPL's poles. FPL also seeks damages associated with AT&T's "improper holdover." ¶ 54.

7

In Count IV, the Complaint alleges a claim for trespass based on AT&T's continued attachment on FPL's poles and seeks an injunction and damages. Both Count III and Count V arise out of FPL's invocation of section 12.3 of the Agreement, which authorizes the right to termination and provides:

> If the default giving rise to a suspension of rights involves the failure to meet a money payment obligation hereunder, and such suspension shall continue for a period of sixty (60) days, then the party not in default may forthwith terminate the rights of the other party to attach to the poles involved in the default.

AT&T moves for dismissal of Counts III and IV on the ground that its payment to FPL of the 2017 and 2018 invoices cured the requisite "failure to meet a money payment obligation" described in section 12.3. FPL disagrees that AT&T's payment cured the breach, instead arguing that it only mitigated the amount of damages. In support of its argument, FPL points to section 13A.4 of the Agreement, which states:

> Each party shall continue to perform its obligations under the [Agreement] pending final resolution of any Dispute, unless to do so would be impossible or impracticable under the circumstances.

In its Opposition, FPL maintains that it was AT&T's failure to make *timely* payment that violated section 13A.4, which authorized FPL to terminate AT&T's right to attach pursuant to section 12.3. The parties' disputes over whether AT&T's payment was timely and the meaning of sections 12.3 and 13A.4 make clear that there is a live case or controversy for the Court to resolve. Additionally, Counts III and IV purport to seek relief for which there is "no adequate remedy at law." ¶¶ 51, 69. Accordingly, AT&T's payment does not deprive the Court of its ability to afford meaningful relief and Counts III and IV are not moot. These same disputes require factual determinations that cannot be resolved at the motion to dismiss stage.

8

**Primary Jurisdiction Doctrine**

AT&T contends that, if the Court does not dismiss FPL's complaint for lack of jurisdiction or failure to exhaust administrative remedies, it should stay the case under the primary jurisdiction doctrine. Primary jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). The "main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." *Boyles v. Shell Oil Products Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000). "No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Duke Energy Progress, Inc. v. Frontier Communications of the Carolinas, Inc.*, No. 5:13-CV-617-FL, 2014 WL 4948112, at *2 (E.D.N.C. Sept. 25, 2014).

The Court must first determine whether the doctrine of primary jurisdiction is applicable to the issues in the case. Where the issue is already before the FCC, the Court "need not decide the issue of whether primary jurisdiction is applicable to any issues in [the] case." *Duke Energy Carolinas, LLC v. Frontier Communications of the Carolinas, LLC*, No. 2:13cv40, 2014 WL 3854146, at *5 (W.D.N.C. Aug. 6, 2014). Even if the doctrine of primary jurisdiction applies, the grant or denial of a request to stay proceedings is within the Court's discretion. *Id.*; *see In re Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litigation*, 955 F. Supp. 2d 1311, 1349 (S.D. Fla. July 24, 2013) (J. Lenard) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)) (observing that "the primary jurisdiction doctrine 'is not designed

to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit,' but instead 'is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency'").

In requesting a stay, AT&T states that the FCC will issue a decision in May or June 2020 that will decide whether the rates charged by FPL are "just and reasonable," which will impact Counts I-IV. A&T points to the following two decisions in which Courts in other districts have granted requests for stays: *Duke Energy Progress, Inc. v. Frontier Comm's of the Carolinas, Inc.*, 2014 WL 4948112, at *5 (E.D.N.C. Sept. 25, 2014); *see also Duke Energy Progress, Inc. v. Frontier Comm's of the Carolinas, Inc.*, 2014 WL 3854146, at *5 (W.D.N.C. Aug. 6, 2014) (finding that stay was warranted because "[i]t would be a waste of judicial resources for this Court to proceed with this case while Defendant's complaint is pending with the FCC.").

The cases relied on by AT&T are distinguishable. Unlike in those cases, in the instant case FPL has received payment from AT&T in the amounts of its invoices. Significantly, those cases did not involve claims for nonmonetary relief. In light of the recommendation that Counts I and II be dismissed, resolution of the "just and reasonable" rental fee is tangential to the issues remaining in this case. AT&T has not shown that injunctive relief is within the FCC's competence or area of expertise. Nor is it clear whether the issue of damages for AT&T's attachment to FPL's poles in 2019 is before the FCC. *See* DE 4-4 at 24 n.97 (defining the "relevant refund period" as 2014-2018). Even if the issue of damages is before the FCC, the Court should exercise its discretion to decline to stay the case.

**Count V**

AT&T argues that FPL's request for a declaratory judgment in Count V is not ripe because FPL did not submit it to mandatory pre-complaint mediation, as required by the terms of the parties' Agreement. "In deciding whether a claim is ripe for adjudication or review, we look primarily at two considerations: 1) the fitness of the issues for judicial decision, and 2) the hardship to the parties of withholding court consideration." *Temple B'Nai Zion, Inc. v. City of Sunny Isles, Beach, Fla.*, 727 F.3d 1349, 1356 (11th Cir. 2013). "[W]here the parties' agreement requires mediation as a condition precedent to arbitration or litigation, the complaint must be dismissed." *Mullales v. Aspen American Ins. Co.*, 2018 WL 6270974, at *1 (S.D. Fla. Nov. 30, 2018) (J. Moreno). FPL and AT&T agree that pre dispute resolution is required by the Agreement. DE 12-2 at 1. Both also agree that the pole abandonment issue raised in Count V was not addressed during the parties' May 1, 2019 mediation. DE 12-2 at 5. FPL and AT&T dispute, however, which party was responsible for initiating mediation of the dispute raised in Count V. Given that mediation of Count V was required but did not occur, Count V should be dismissed so that the dispute can be mediated.

## CONCLUSION

It is RECOMMENDED that the Motion to Dismiss, or in the Alternative Stay, be GRANTED IN PART and DENIED IN PART. Specifically, the Motion should be GRANTED with respect to Counts I and II. The Motion should be DENIED with respect to Counts III and IV. The Motion should be GRANTED WITHOUT PREJUDICE as to Count V.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern

District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THEY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**DONE AND SUBMITTED** in Chambers this 31st day of January, 2020, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE